*982 Judge MANNHEIMER,
concurring.
I write separately because I believe that even under the narrower, common-law definition of robbery, Gibson: committed robbery when she used force to prevent the victims from regaining their property during her accomplice's immediate flight from the scene.
According to Professor Perkins's text on the criminal law-Rollin M. Perkins & Ronald N. Boyce, Criminal Law (Brd edition 1982)-the common-law courts distinguished between (1) situations where a person committed a theft and then later used force or intimidation to prevent the property owner from retaking the stolen property, and (2) situations where a person committed a theft and used force or intimidation to stop the property owner from immediately retaking the property:
The former situation-instances where, "subsequent to the larceny[,] the owner should come upon the thief and be prevented from retaking his property by force or [intimidation]"-was treated by the common law as "larceny and assault, but not robbery." Id. at 349. But the latter situation-instances where "one snatches property from the hand of another and uses force or intimidation to prevent an immediate retaking by the other"-was "all one transaction and constitute[d] robbery." Ibid.
I acknowledge that the Commentary to the Model Penal Code suggests that the common-law rule was different.
According to the drafters of the Model Penal Code, their definition of robbery (§ 222.1) was intended to expand the common-law definition of robbery by expressly including the use of force (or threat of force) during the thief's immediate flight after the taking. The drafters declared that "[plrior law was ... narrower ... on this point and did not include [the use of] force during flight within the offense of robbery.[1]
In support of this assertion, the Model Penal Code drafters cited a passage from William Blackstone's Commentaries on the Laws of England-but the drafters appear to have misinterpreted this passage.
In the cited passage-Commentaries, Vol. IV, Chapter 17 ("Of Offenses Against Private Property"), p. 242-Blackstone addressed the common-law rule that a thief's later use of force to hold onto the property was not deemed a robbery. But note that, in this passage, Blackstone speaks of the act of "privately stealing":
Lastly, [to constitute robbery,] the taking must be by force, or a previous putting in fear; which makes the violation of the person more atrocious than privately stealing. For if one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear, this is no robbery, for the fear is subsequent.
Modern readers might easily skip over, or ignore, the word "privately"-because we no longer use this word in the technical sense that Blackstone meant it.
In the eighteenth century, the word "private" meant "secret" or "concealed".[2] A "private stealing" meant an act of larceny that occurred without the property owner's knowledge.
Thus, the phrase "private stealing" was used to describe the act of a pickpocket if the theft went wholly undetected at the time. Indeed, the prosecutor was required to prove the victim's complete lack of contemporaneous knowledge that a theft was occurring, else the crime was not pickpocketing:
Up until 1808 [%e., forty years after Blackstone published his Commentaries ], this crime [of pickpocketing] involved "privately" stealing from the person of another, which meant without their knowledge, goods worth more than a shilling. The difficulty of proving that the victim had no knowledge of the crime made it difficult to *983 convict defendants of this offence, though many were found guilty [of] lesser charges through use of partial verdicts.
Clive Emsley, Tim Hitchcock, and Robert Shoemaker, "Crime and Justice-Crimes Tried at the Old Bailey", Old Bailey Proceedings Online (www.oldbaileyonline.org, version 7.0, 12 October 2014); "Crime, Justice and Punishment" / "Crimes Tried at the Old Bailey" / "Theft" / "Pickpocketing".
This same erime of pickpocketing-and the phrase, "private stealing"-also applied to thefts committed by prostitutes whose clients were asleep or otherwise distracted. Ibid.
Thus, when Blackstone refers to cases where someone "privately steals sixpence from the person of another", he is referring to thefts that go undetected at the time. As Blackstone explains, if the thief "afterwards keeps [the sixpence] by putting [the owner] in fear, this is no robbery, for the fear is subsequent." That is, if the thief's use of force or intimidation occurs afterwards, as part of a separate transaction, then the thief has committed larceny and a separate assault, but not robbery.
The drafters of the Model Penal Code interpreted the passage from Blackstone too broadly when they declared that, at common law, there was no robbery if the use of force occurred at any time after the moment of the taking. The passage from Blackstone does not support this assertion.
Instead, what Blackstone said on this subject is wholly consistent with the rule stated in Perkins & Boyce: there was no robbery at common law if the thief used force at a separate time to retain the property; but the crime of robbery did include the use of force during the same transaction as the act of taking.
Returning to Gibson's case: The intention of the drafters of the Model Penal Code and the drafters of the Alaska criminal code was to expand the common-law definition of robbery. The common-law definition of robbery already encompassed the conduct exhibited in Gibson's case. This Court would therefore be thwarting the intention of the legislature if we construed our second-degree robbery statute to exclude Gibson's conduct from the definition of robbery.
For these reasons (in addition to the reasons explained in the lead opinion), I join my colleagues in affirming Gibson's conviction for second-degree robbery.

. American Law Institute, Model Penal Code and Commentaries (Official Draft and Revised Comments, 1980), Part II, Definition of Specific Crimes (§§ 220.1-230.5), p. 104.

. See the Oxford English Dictionary, citing these examples of usage from the 1700s:
- "He lay private, till his Peace was made with the King." (1700)
''If the sound comes to you dead, and flat, it is a sign of some private infirmity." (1726)
"'Let private weddings be for doubtful happiness." (1753)